1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

EARL IRA BOWMAN,

9

Petitioner,

10

v.

11

RON HAYNES,

12

Respondent.

13

Case No. C18-0106-RSL-MAT

REPORT AND RECOMMENDATION

14

## I.      INTRODUCTION

15

Petitioner, a state prisoner who has been released on community custody, seeks relief under

16

28 U.S.C. § 2254 from a 2016 King County judgment and sentence.  Respondent has filed an

17

answer to petitioner's habeas petition and submitted relevant portions of the state court record.

18

Petitioner did not file a response.  Having considered the parties' submissions, the balance of the

19

record, and the governing law, the Court recommends that petitioner's habeas petition be

20

DENIED, a certificate of appealability be DENIED, and this action be DISMISSED with

21

prejudice.

22

## II.      FACTUAL AND PROCEDURAL HISTORY

23

The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, found that

REPORT AND RECOMMENDATION - 1

1   petitioner's counsel accurately set forth the material facts in his brief. (Dkt. 15, Ex. 3 at 2.)

2   Counsel's factual summary is as follows:

3

> On October 6, 2015, the King County prosecutor charged appellant Earl Bowman
4   with second degree robbery and second degree assault. Both charges included the
> allegation that the offense was a crime of domestic violence.

5

> Bowman was arraigned on October 20, 2015. Bowman subsequently entered time
> for trial waivers, and numerous orders were entered continuing the case scheduling
6   hearing.

7

> On May 20, 2016, the court granted the state's motion to amend the information to
> charge second degree robbery and third degree assault, with the robbery charge to
8   be dismissed at sentencing. That same day Bowman pled guilty to second degree
> assault.

9

> The state asserted Bowman's offender score was 9 points, and the standard range
10   51-68 months, with 60 months as the statutory maximum. The state would
> recommend a 60-month sentence, with the defense free to recommend a prison-
11   based Drug Offender Sentencing Alternative (DOSA).

12

> Bowman entered several waivers of speedy sentencing, to July 29, 2016. On July
> 29, 2016, the court held a hearing and granted a motion to allow new defense
13   counsel. Questions about Bowman's offender score had been raised.

14

> At a hearing on November 23, 2016, Bowman's new counsel noted a potential issue
> regarding Bowman's offender score, regarding whether Bowman was still on
15   community custody when the current offense was committed. Although the
> prosecutor had shown counsel several printouts from Department of Corrections
16   (DOC) records, Bowman's new counsel requested a continuance so he could review
> additional records that Bowman had requested from the DOC. Counsel thought the
17   issue "might be close." After new counsel appeared, Bowman waived speedy
> sentencing to January 31, 2017. Bowman personally made it clear that the correct
18   offender score was very important to him. The court granted Bowman one last
> continuance of sentencing.

19

> On December 21, 2016, Bowman withdrew his initial plea based on offender score
20   errors. The order states withdrawal was based on the ineffective assistance of
> Bowman's first attorney, and on the agreement of the parties.

21

> Shortly after withdrawing the first plea, Bowman again pled guilty to second degree
22   assault as charged in the amended information. His offender score was now 7
> points, based on 6 prior felonies, with one point added because the offense was
23   committed while Bowman was still on community custody.

REPORT AND RECOMMENDATION - 2

Bowman's plea form and plea agreement stated he agreed with the offender score calculation. The prosecutor's colloquy with Bowman reaffirmed this agreement. Bowman also agreed to recommend a 43-month sentence at the top of the 33-43 month range, and agreed the sentence required 12 months of community custody and $600 in mandatory legal financial obligations (LFOs).

At the plea hearing, the prosecutor asked Bowman customary questions regarding the waiver of his trial rights and the voluntariness of his guilty plea. In the colloquy and his written plea statement, Bowman acknowledged and waived his rights, admitted a factual basis for the plea, and established that the offense was committed September 26, 2015. At the conclusion of this colloquy, Bowman pled guilty. The court found the plea to be knowing, intelligent, and voluntary.

Sentencing immediately followed the plea's acceptance. The prosecutor made the agreed 43-month recommendation.

Defense counsel briefly spoke and noted his meetings with Bowman and his preparation before sentencing. Counsel said Bowman "is a very smart and kind person." Bowman was "very concerned about other people," including his ailing mother and others in custody with him.

Bowman also spoke. He apologized to his girlfriend, his mother, and the court. He noted he was out "drinking and drugging" because "I wasn't on my meds." He mentioned a problem with alcohol and drugs, and homelessness. He asked for help to get structure and housing, and for his mental health issues. He asked for leniency and understanding of how hard it is to be homeless. He mentioned a mental health report, and a nephew who had recently been killed. Bowman also submitted a law review article discussing the substantial barriers people face reentering society following a prison sentence.

The court then accepted the agreed recommendation and sentenced Bowman to 43 months. The court ordered credit for time served as calculated by the King County Jail.

The court noted that Bowman would need to seek help on release, through AA, and to seek out Sound Mental Health to get his medications straightened out. The court imposed mandatory LFOs, including a $500 victim penalty assessment and a $100 DNA collection fee. The court noted that restitution would be set at a future time if requested. The court waived interest on all LFOs except restitution.

The court also imposed 12 months of community custody, because the current offense was a crime against a person. The court entered standard community custody conditions.

The sentencing conditions were part of the agreed resolution by the parties. Also as part of the plea agreement, the court dismissed count 1. The court also entered

REPORT AND RECOMMENDATION - 3

a no-contact order precluding contact with Ikesha Davis for five years from the date
of sentencing.

(Dkt. 15, Ex. 4 at 3-9 (footnotes and citations omitted).)

On direct appeal, petitioner's counsel filed an *Anders*[1] brief and a motion to withdraw as counsel.  (*Id.*, Ex. 4.)  The State responded and petitioner filed a reply *pro se*.  (*Id.*, Exs. 5 & 6.) The Court of Appeals conducted an independent review of the record and determined that the potential issues, including the calculation of petitioner's offender score, ineffective assistance of counsel, speedy sentencing, and the no-contact order, were "wholly frivolous."  (*Id.*, Ex. 3 at 2.) The Washington Supreme Court denied petitioner's motion for discretionary review.  (*Id.*, Exs. 7 & 8.)

Petitioner subsequently filed three personal restraint petitions and a second direct appeal. (*Id.*, Exs. 10-17.)  These proceedings remain pending and do not appear to affect this action.  (*See id.*, Exs. 10, 14, 16, 18; *see also* Dkt. 13 at 6.)

On March 12, 2018, petitioner was released on community custody and is currently serving his community custody term in King County.  (Dkt. 15, Ex. 2 at 1.)

### III.    GROUNDS FOR RELIEF

Petitioner's ground for habeas relief may be summarized as follows:

1.  Petitioner received an illegal sentence under Washington's Sentencing Reform Act based on an incorrect calculation of his offender score.

2.  The trial court violated petitioner's right to speedy sentencing.

3.  Trial counsel was ineffective for failing to raise the scoring issue identified in Ground 1.

---

[1] The reference is to *Anders v. California*, 386 U.S. 738 (1967), in which the Supreme Court specified how appointed criminal counsel should proceed when determining, "after a conscientious examination," that a client's appeal is "wholly frivolous."  *Id.* at 744.  The Court concluded that counsel "should so advise the court and request permission to withdraw."  *Id.*  Counsel also must submit "a brief referring to anything in the record that might arguably support the appeal."  *Id.*  Such briefs are known as "*Anders* briefs."

REPORT AND RECOMMENDATION - 4

1

2
    4.   The Washington Department of Corrections violated petitioner's right to travel when it declined to allow him to return to his county of origin.

3
(Dkt. 5 at 5, 7, 8, 10.)

4

IV.    <u>STANDARD OF REVIEW</u>

5
A.   <u>Merits review</u>

6
       Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

7
petition may be granted with respect to any claim adjudicated on the merits in state court only if

8
(1) the state court's decision was contrary to, or involved an unreasonable application of, clearly

9
established federal law, as determined by the Supreme Court, or (2) the decision was based on an

10
unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

11
In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court

12
that adjudicated the claim on the merits, and the petitioner carries the burden of proof.  *Cullen v.*

13
*Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th

14
Cir. 2013).  "When more than one state court has adjudicated a claim, [the Court analyzes] the last

15
reasoned decision."  *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v.*

16
*Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

17
       Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition

18
only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

19
question of law, or if the state court decides a case differently than the Supreme Court has on a set

20
of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under

21
the "unreasonable application" clause, a federal habeas court may grant the writ only if the state

22
court identifies the correct governing legal principle from the Supreme Court's decisions, but

23
unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at 407-09.  The

Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id.* "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

/ / /

REPORT AND RECOMMENDATION - 6

1    B.    Exhaustion

2        Before seeking federal habeas relief, a state prisoner must exhaust the remedies available

3    in the state courts.  The exhaustion requirement reflects a policy of federal-state comity, intended

4    to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its

5    prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and

6    citation marks omitted).

7        There are two avenues by which a petitioner may satisfy the exhaustion requirement.  First,

8    a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in each

9    appropriate state court, including the state supreme court with powers of discretionary review,

10    thereby giving those courts the opportunity to act on his claim.  *Baldwin v. Reese*, 541 U.S. 27, 29

11    (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).  "It has to be clear from the petition filed

12    at each level in the state court system that the petitioner is claiming the violation of the federal

13    constitution that the petitioner subsequently claims in the federal habeas petition."  *Galvan v.*

14    *Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

15        Second, a petitioner may technically exhaust his state remedies by demonstrating that his

16    "claims are now procedurally barred under [state] law."  *Gray v. Netherland*, 518 U.S. 152, 162-

17    63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*, 510

18    F.3d 1127, 1139 (9th Cir. 2007) (en banc).  If the petitioner is procedurally barred from presenting

19    his federal claims to the appropriate state court at the time of filing his federal habeas petition, the

20    claims are deemed to be procedurally defaulted for purposes of federal habeas review.  *O'Sullivan*

21    *v. Boerckel*, 526 U.S. 838, 848 (1999).  A habeas petitioner who has defaulted his federal claims

22    in state court meets the technical requirements for exhaustion because "there are no state remedies

23    any longer 'available' to him."  *Coleman v. Thompson*, 501 U.S. 722, 732 (2007).  Federal habeas

1  review of procedurally defaulted claims is barred unless the petitioner can either demonstrate cause

2  for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

3  that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 724.

4  V.    DISCUSSION

5  A.    Grounds 1 and 2

6  In Ground 1, petitioner claims that his sentence was illegal under Washington's Sentencing

7  Reform Act because his offender score was calculated incorrectly. In Ground 2, petitioner claims

8  a speedy sentencing violation. Respondent concedes that petitioner exhausted these claims but

9  argues that he is not entitled to federal habeas relief because these claims are based on state law.

10  (Dkt. 13 at 16-17.)

11  Federal courts do not grant habeas relief for errors of state law. *See Estelle v. McGuire*,

12  502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding

13  whether a conviction violated the Constitution, laws, or treaties of the United States"). Thus, state

14  court procedural and evidentiary rulings are not subject to federal habeas review unless such

15  rulings "violate[] federal law, either by infringing upon a specific constitutional or statutory

16  provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process."

17  *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (cited sources omitted).

18  With respect to Ground 1, petitioner's state-court briefs cite Washington's Sentencing

19  Reform Act and state cases interpreting that statute within the state law context. (*See* Dkt. 15, Ex.

20  6 at 2-3, Ex. 7 at 3-4.) Ground 1 thus asserts a state law violation and does not implicate federal

21  constitutional rights. Accordingly, Ground 1 should be DENIED.

22  With respect to Ground 2, petitioner's briefing in the state courts cites the Sixth and

23  Fourteenth Amendments, state statutes and court rules, and state cases that rely on statutory and

1    Sixth Amendment constitutional analysis.  (*See* Dkt. 15, Ex. 7 at 1, 4-5.)  Specifically, petitioner

2    cites *State v. Ellis*, 76 Wash. App. 391 (1994), which discussed speedy sentencing rights under the

3    Sixth Amendment.   In 2016, however, the United States Supreme Court held that the Sixth

4    Amendment protects the accused from arrest through trial, but does not apply once a defendant

5    has been found guilty of criminal charges.  *Betterman v. Montana*, 136 S. Ct. 1609, 1613-14, 1617

6    (2016).  Rather, "inordinate" delays in sentencing may give rise to a claim under the Fourteenth

7    Amendment's due process clause.  *Id.* at 1612.  Under *Betterman*, petitioner cannot base his speedy

8    sentencing claim on the Sixth Amendment.  Moreover, petitioner does not identify an inordinate

9    delay that would implicate any federal due process rights.  Ground 2 thus fails to raise a viable

10   federal constitutional claim and should be DENIED.

11   B.     Ground 3

12          In Ground 3, petitioner claims ineffective assistance of counsel based on trial counsel's

13   failure to challenge his offender score.  Respondent concedes that petitioner exhausted this claim

14   but argues that the state courts reasonably denied it.

15          The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

16   counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Claims of ineffective assistance of

17   counsel are evaluated under the two-prong test set forth in *Strickland.*   Under *Strickland*, a

18   defendant must prove that (1) counsel's performance was deficient and, (2) the deficient

19   performance prejudiced the defense.  *Id.* at 687.

20          With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

21   performance fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of

22   counsel's performance must be highly deferential.  *Id.* at 689.  "A fair assessment of attorney

23   performance requires that every effort be made to eliminate the distorting effects of hindsight, to

REPORT AND RECOMMENDATION - 9

1    reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

2    counsel's perspective at the time." *Id.*  In order to prevail on an ineffective assistance of counsel

3    claim, a petitioner must overcome the presumption that counsel's challenged actions might be

4    considered sound trial strategy. *Id.*

5         The second prong of the *Strickland* test requires a showing of actual prejudice related to

6    counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a

7    reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

8    would have been different.  A reasonable probability is a probability sufficient to undermine

9    confidence in the outcome." *Id.* at 694.  "That requires a 'substantial,' not just 'conceivable,'

10   likelihood of a different result."  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting

11   *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).

12        While the Supreme Court established in *Strickland* the legal principles that govern claims

13   of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether

14   defense counsel's performance fell below the *Strickland* standard.  *Richter*, 562 U.S. at 101.

15   Rather, when considering an ineffective assistance of counsel claim on federal habeas review,

16   "[t]he pivotal question is whether the state court's application of the *Strickland* standard was

17   unreasonable." *Id.*; *see also Burt v. Titlow*, 134 S. Ct. 10, 18 (2013).  "A state court must be

18   granted a deference and latitude that are not in operation when the case involves review under the

19   *Strickland* standard itself." *Richter*, 562 U.S. at 101.  Thus, federal habeas review of a state court's

20   adjudication of an ineffective assistance of counsel claim is "doubly deferential."  *Pinholster*, 563

21   U.S. at 190 (quoting *Knowles v. Mirzayance*, 566 U.S. 111, 123 (2009)).

22        Petitioner fails to identify any evidence in the record supporting his claim that his offender

23   score was calculated incorrectly.  At the sentencing hearing, petitioner agreed with his offender

REPORT AND RECOMMENDATION - 10

1   score.  (Dkt. 15, Ex. 19 at 34.)  Even appellate counsel could not argue a legitimate basis for

2   ineffective assistance regarding petitioner's offender score.  (*See id.*, Ex. 4.)  Petitioner fails to

3   show that the Court of Appeals unreasonably applied *Strickland* when it determined that his

4   ineffective assistance of counsel claim was frivolous.  Ground 3 should be DENIED.

5   C.      Ground 4

6          In Ground 4, petitioner asserts that the DOC violated his right to travel when it declined to

7   allow him to return to his county of origin.  Respondent argues that petitioner failed to exhaust this

8   claim and that, in any event, it is moot.

9          Under Article III of the U.S. Constitution, federal courts may adjudicate only actual,

10  ongoing cases or controversies.  *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988).  "[F]ederal

11  courts may not 'give opinions upon moot questions or abstract propositions.'"  *Calderon v. Moore*,

12  518 U.S. 149, 150 (1996) (per curiam) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  "This

13  means that, throughout the litigation, the [petitioner] 'must have suffered, or be threatened with,

14  an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial

15  decision."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494

16  U.S. 472, 477 (1990)).

17         Petitioner has been released to King County, which appears to be his county of origin.

18  Accordingly, any claim challenging DOC's prior refusal to place him in King County is moot.

19  Ground 4 should be DENIED.

20                    VI.      CERTIFICATE OF APPEALABILITY

21         A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

22  dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

23  district or circuit judge.  A certificate of appealability may issue only where a petitioner has made

1    "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  A petitioner

2    satisfies this standard "by demonstrating that jurists of reason could disagree with the district

3    court's resolution of his constitutional claims or that jurists could conclude the issues presented

4    are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322,

5    327 (2003).  Under this standard, the Court concludes that petitioner is not entitled to a certificate

6    of appealability for any of the claims raised in this action.

7                                  VII.    <u>CONCLUSION</u>

8         The Court recommends petitioner's habeas petition be DENIED and this action be

9    DISMISSED with prejudice.  The Court further recommends that a certificate of appealability be

10   DENIED as to all claims raised in this action.  A proposed order accompanies this Report and

11   Recommendation.

12        Objections to this Report and Recommendation, if any, should be filed with the Clerk and

13   served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

14   and Recommendation is signed.  Failure to file objections within the specified time may affect

15   your right to appeal.  Objections should be noted for consideration on the District Judge's motions

16   calendar for the third Friday after they are filed.  Responses to objections may be filed within

17   **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be

18   ready for consideration by the District Judge on **<u>May 25, 2018</u>**.

19        Dated this <u>3rd</u> day of May, 2018.

20

21   _____

22   Mary Alice Theiler
     United States Magistrate Judge

23

REPORT AND RECOMMENDATION - 12